IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

DAVID PATRICK GOAD,

    Plaintiff,

v.                                          2:24-CV-124-Z-BR

ANDREW CODY LACKEY, *et al.*,

    Defendants.

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant CL Specialty Construction, LLC's ("Defendant" or the "LLC") Motion for Summary Judgment ("Motion"), filed April 16, 2025. ECF No. 47. Plaintiff responded on May 7, 2025. ECF No. 48. Defendant replied on May 20, 2025. ECF No. 51. The Motion is now ripe. Having reviewed the Motion, briefing, and relevant law, the Motion is **DENIED**.

### BACKGROUND

"This is an assault case." ECF No. 47 at 1. On November 12, 2022, Plaintiff had dinner at OHMS, a restaurant in downtown Amarillo. *See* ECF No. 49 at 6. He then "went for drinks across the street" at LIT Arcade Bar. *Id.* "Shortly after arriving at LIT, the video from the bar shows that [Plaintiff] walked outside, held the door open for another guy walking in, lit a cigarette, slowly walked to the other side of the patio and got knocked out." *Id.* While the video "does not specifically show the punch being thrown . . . that knocked [Plaintiff] to the ground," it indicates Plaintiff "was outside approximately three seconds before he was felled by the blow." ECF No. 49 at 7. Plaintiff alleges that the punch has caused him "to suffer [a] brain bleed and continuing problems with paroxysmal positional vertigo." *Id.*

Plaintiff's assailant was Andrew Cody Lackey, an Alabama contractor who owns CL Specialty Construction, LLC. ECF No. 49 at 4. Lackey was in the Amarillo area "for about one week" with employees of the LLC and several subcontractors to "lay concrete foundations" for a local business. ECF No. 47 at 2. Plaintiff did not know Lackey before the assault. ECF No. 49 at 7. Before their encounter, Lackey was socializing with companions at Chesney's Whiskey Saloon, another bar in downtown Amarillo, "for two or three hours." ECF No. 47 at 2. During that time, he "had more than one beer." *Id.* After one of Lackey's companions was "kicked out of the bar and punched in the mouth by a bouncer," Lackey left the bar, where he "witnessed an altercation involving bouncers" and several of his companions. *Id.* at 2–3.

"Lackey and others broke up the brawl, which spilled toward the adjacent" LIT Arcade Bar. ECF No. 47 at 3. Lackey then turned a corner, encountered Plaintiff, and threw a punch that knocked Plaintiff to the ground. *See id.*; ECF No. 49 at 6–7. Lackey does not dispute that he punched Plaintiff. *See* ECF No. 51 at 2 ("The punch was fueled by personal animosity . . . ."). Plaintiff contends that the punch was unprovoked; Lackey recalls Plaintiff "telling the group to leave Texas and not return, someone telling [Plaintiff] to 'shut up,' then [Plaintiff] stepping toward Defendant Lackey, and Defendant Lackey striking him in the mouth." ECF No. 49 at 7; ECF No. 47 at 3. Lackey fled the scene. *See* ECF No. 49 at 12. Texas state prosecutors charged Lackey with aggravated assault causing serious bodily injury, a second-degree felony. *Id.* at 7. Lackey pleaded guilty to the lesser included offense of assault causing bodily injury. *Id.* With Plaintiff's consent, Lackey's "sentence of confinement was suspended and he was placed on straight probation for two years." *Id.*

Plaintiff sued Lackey and the LLC in Texas state court, arguing that because Lackey "was acting within the course and scope of his employment with" the LLC when he attacked

Plaintiff, both Lackey and the LLC should be liable for Plaintiff's injuries. ECF No. 1 at 2. Plaintiff sought compensatory and punitive damages from both Lackey and the LLC. ECF No. 1-1 at 6. On June 5, 2024, Defendants removed this case to federal court pursuant to 28 U.S.C. Section 1332(a). *See* ECF No. 1.

On April 16, 2025, the LLC—and only the LLC—moved for summary judgment, arguing that Lackey was not acting within "the course and scope of his employment" when he assaulted Plaintiff. ECF No. 47 at 4; *see also* ECF No. 51 at 2 ("The true issue is whether Defendant Lackey was in the course and scope of his employment when he punched [Plaintiff]."). Defendants do not dispute that even if this Motion is granted, Lackey may still be liable to Plaintiff in his individual capacity. *See* ECF No. 51 at 1–2. The question before the Court is whether the LLC may also be liable. *See* ECF No. 49 at 4.

### LEGAL STANDARD

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A fact is "material" if its existence or non-existence "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Disputes about a material fact are "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* "In determining whether a genuine issue as to any material fact exists, [courts] must view the evidence in the light most favorable to the nonmoving party." *Fahim v. Marriot Hotel Servs., Inc.*, 551 F.3d 344, 348–49 (5th Cir. 2008).

Even so, "the nonmovant may not rely on mere allegations in the pleadings; rather, the nonmovant must respond to the motion for summary judgment by setting forth particular facts indicating that there is a genuine issue for trial." *Caboni v. Gen. Motors Corp.*, 278 F.3d

448, 451 (5th Cir. 2002) (citations omitted). And "Rule 56 does not impose on the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915 n.7 (5th Cir. 1992). Instead, parties opposing summary judgment must "identify specific evidence in the record, and . . . articulate the precise manner in which that evidence support[s] their claim." *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994) (citation and internal quotation marks omitted). "After the nonmovant has been given an opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted." *Caboni*, 278 F.3d at 451 (citing FED. R. CIV. P. 56(c)).

Lastly, "a federal court sitting in a diversity case is obligated to apply the substantive law of the state in which it is sitting." *Hanley v. Forester*, 903 F.2d 1030, 1032 (5th Cir. 1990). Here, Texas state law is the relevant substantive law. *See* ECF No. 47 at 4 ("Texas substantive law is appropriate in this case, which was removed on the basis of diversity."); ECF No. 49 (not mentioning choice-of-law in diversity cases directly but discussing Texas state cases throughout).

ANALYSIS

### I. Vicarious Liability

"[T]o prove an employer's vicarious liability for a worker's negligence, the plaintiff must show that, at the time of the negligent conduct, the worker (1) was an employee and (2) was acting in the course and scope of his employment." *Painter v. Amerimex Drilling I, Ltd.*, 561 S.W.3d 125, 131 (Tex. 2018) (citing *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 757 (Tex. 2007)). As to the second prong, "vicarious liability arises only if the tortious act falls 'within the scope of the employee's general authority in furtherance of the employer's business and for the accomplishment of the object for which the employee was hired.'" *Id.*

(quoting *Mayes*, 236 S.W.3d at 757). More than this, "the act must be of the same general nature as the conduct authorized or incidental to the conduct authorized." *Id.* (citation and internal quotation marks omitted). This means "if an employee deviates from the performance of his duties for his own purposes, the employer is not responsible for what occurs during that deviation." *Id.* (citation and internal quotation marks omitted).

Neither party disputes that Lackey was an employee of the LLC at the time of the assault. *See* ECF No. 47 at 1 ("Defendant Lackey is the owner and sole member of CL Specialty."); ECF No. 49 at 6 ("Lackey is the sole owner, member, manager, president, and the only decision maker regarding how his company, CL Specialty Construction, LLC, is operated."). Instead, the LLC focuses its briefing on the course-and-scope element of establishing vicarious liability.

In this case, Lackey was in Amarillo "to lay concrete foundations" for a local business. ECF No. 47 at 2. He was in the Amarillo area "for about one week with his employees" and subcontractors before the assault occurred. *Id.* The assault took place on a Saturday night in an area of downtown Amarillo known for its nightlife, hours after Lackey had completed his workday. *See id.* And the assault had only a tangential relationship with Lackey's work for the LLC. *See* ECF No. 49 at 11 (noting that Lackey fled the scene in an "LLC-owned vehicle" to return with his employees "to the lodging paid for by the LLC").

Based on these facts, Lackey was likely *not* acting within the course and scope of his employment when he assaulted Plaintiff. *See, e.g., Mackey v. U.P. Enters., Inc.*, 935 S.W.2d 446, 453 (Tex. App.—Tyler 1996, no writ) ("Assault is considered as an expression of personal animosity and not for the purpose of carrying out a master's business." (citing *Tierra Drilling Corp. v. Detmar*, 666 S.W.2d 661 (Tex. App.—Corpus Christi 1984, no writ))); *Green v. Jackson*, 674 S.W.2d 395, 398 (Tex. App.—Amarillo 1984, writ ref'd n.r.e.) (noting that

employers cannot be liable for their employees' actions unless "the act complained of arose directly out of and was done in the prosecution of the business that the servant was employed to do"); *Valdez v. Church's Fried Chicken, Inc.*, 683 F. Supp. 596, 610 (W.D. Tex. 1988) (finding no respondeat superior liability under Texas law where the plaintiff was assaulted by a "team leader" of a restaurant chain, but the team leader was not authorized to use force); *Viking v. Circle K Convenience Stores*, 742 S.W.2d 732, 734 (Tex. App.—Houston [1st Dist.] 1987, writ denied) (assault not in course and scope of employment where employee left his store unattended to follow the victim into the street to shoot him for personal reasons). This means the LLC is likely not vicariously liable for Lackey's actions. Even so, the LLC could still be directly liable.

## II. Direct Liability

As noted above, Plaintiff does not seriously contend that Lackey's actions meet the traditional course-and-scope requirement for vicarious liability. *See* ECF No. 49 at 8 (mentioning course-and-scope only twice and arguing that an "employing entity may still be liable for the acts of its vice-principal even if such acts are not within the course and scope of his employment"). Instead, Plaintiff argues that the LLC is directly liable for Lackey's actions, focusing on a "vice-principal" theory of liability.

### A. Vice-Principal Liability

Unlike the respondeat superior theory of recovery, which holds a corporation vicariously liable for the actions of an employee, the vice-principal concept relates to "the liability of a corporation for its own actions." *Hammerly Oaks, Inc. v. Edwards*, 958 S.W.2d 387, 391 (Tex. 1997). Plaintiff contends that an "employing entity may still be liable for the acts of its vice-principal even if such acts are not within the course and scope of his employment." ECF No. 49 at 8. In support of this argument, Plaintiff relies heavily on *Bennett v. Reynolds*, 315 S.W.3d 867 (Tex. 2010). *See* ECF No. 49 at 8–11.

6

Plaintiff cites *Bennett* for both his direct and vicarious liability arguments. And he cites *Bennett* throughout his Response in support of both his compensatory and punitive damages claims. *Bennett*, however, concerns only direct liability, and only punitive, or "exemplary," damages. 315 S.W.3d at 868 ("Today we clarify the standards for reviewing exemplary damages . . . ."). In *Bennett*, the Texas Supreme Court noted that in deciding "whether exemplary damages can be assessed against a corporation," Texas law "focuse[s] on the concept of a vice-principal." 315 S.W.3d at 883. This is because "the vice-principal 'represents the corporation in its corporate capacity'" and so a vice-principal's acts "are deemed to be acts of the corporation for purposes of exemplary damages." *Id.* (quoting *Hammerly Oaks*, 958 S.W.2d at 391). Even so, the vice-principal must have "act[ed] in a corporate capacity" for the corporation to be liable for punitive damages. *Id.* at 885. This means a corporation "cannot be liable for exemplary damages if the vice-principal's misconduct occurred while he was acting in a personal capacity unrelated to his authority as a corporate vice-principal." *Id.* at 884–85.

Lackey unquestionably qualifies as a corporate vice-principal. A vice-principal includes:

> (1) corporate officers; (2) those who have authority to employ, direct, and discharge servants of the master; (3) those engaged in the performance of nondelegable or absolute duties of the master; and (4) those to whom the master has confided the management of the whole or a department or a division of the business.

*Kinder Morgan N. Tex. Pipeline, L.P. v. Justiss*, 202 S.W.3d 427, 446 n.12 (Tex. App.—Texarkana 2006, no pet.) (citation modified). Lackey was clearly at least a corporate officer of the LLC, if not also someone with "authority to employ, direct, and discharge" the LLC's business and someone in "whom the master has confided the management of the whole or a department or a division of the business." *Id.*

But Lackey was not acting in a corporate capacity when he assaulted Plaintiff. Vice-principal liability is only "established if the corporation's agent 'used corporate authority'" to commit a tort or criminal act. *Century Sur. Co. v. Seidel*, 893 F.3d 328, 337 (5th Cir. 2018) (quoting *Bennett*, 315 S.W.3d at 883). In *Bennett*, the Texas Supreme Court found that the defendant had acted in a corporate capacity because he "used corporate authority over corporate employees, on corporate land, to convert cattle using corporate equipment." 315 S.W.3d at 885. Not so here. Lackey was at a bar on a Saturday night when he punched Plaintiff. Though he was with his employees and subcontractors and fled the scene in the company vehicle, their activities that evening bore no relation to the reason Lackey was in Amarillo: to "lay concrete foundations for an aggregate business." ECF No. 47 at 2. This is not enough to show that Lackey was acting in a "corporate capacity" when he punched Plaintiff.

### B. Ratification

Defendant argues in reply that the LLC "is entitled to summary judgment" for another reason: The LLC allegedly "did not ratify, authorize, or approve of the assault." ECF No. 51 at 1. Defendant then fails to explain why that is so. Instead, Defendant's Reply focuses entirely on the course-and-scope analysis. *Id.* at 1–2. The same is true of Defendant's initial Motion. *See* ECF No. 47 at 8 (offering only a conclusory statement that the LLC "did not ratify, authorize, or approve of the assault"). Plaintiff's discussion of ratification is equally conclusory. Without citation to any legal authority to support his argument, Plaintiff flatly states that Lackey "ratified his own criminal acts" by "using LLC funds to pay for his legal fees" in his criminal case. ECF No. 49 at 13.

Under Texas law, "[r]atification occurs when 'the employer or its vice-principal confirms, adopts, or fails to repudiate the acts of its employee.'" *Duffie v. Wichita Cnty.*, 990 F. Supp. 2d 695, 722 (N.D. Tex. 2013) (quoting *Prunty v. Ark. Freightways, Inc.*, 16 F.3d 649,

8

653 (5th Cir. 1994)); *see also Hammerly Oaks*, 958 S.W.2d at 391 ("[I]f the act is that of a mere servant or employee as such, then it must have been previously authorized or subsequently must be approved by the corporation." (quoting *Ft. Wor. Elevators Co. v. Russell*, 70 S.W.2d 397, 406 (Tex. 1934), *overruled on other grounds by, Wright v. Gifford–Hill & Co.*, 725 S.W.2d 712, 714 (Tex. 1987))). Ratification can create liability for both compensatory and punitive damages. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 41.005(c)(4) ("In an action arising out of a criminal act committed by an employee, the employer may be liable for punitive damages but only if: . . . the employer or a manager of the employer ratified or approved the act."). Crucially, an "employer may ratify the intentional torts of its employees, *even if the intentional torts are committed outside the course and scope of the employment*." *Duffie*, 990 F. Supp. 2d at 722 (emphasis added). And ratification creates direct liability for an employee's conduct, unlike the doctrine of respondeat superior, which holds an employer indirectly liable. *See Skidmore v. Precision Printing & Pkg., Inc.*, 188 F.3d 606, 614 (5th Cir. 1999) ("Under Texas law, an employer may be vicariously liable for the intentional tort of its employee under the doctrine of respondeat superior or directly liable under the theory of ratification."). Whether an employer has ratified an employee's conduct is a question of fact. *See Gay v. Aramark Unif. & Career Apparel, Inc.*, No. CIV.A. H-07-1161, 2007 WL 4190781, at *17 (S.D. Tex. Nov. 21, 2007) (noting that ratification is a "fact issue"); *Smith v. Michels Corp.*, No. 2:13-CV-185, 2014 WL 708416, at *2 (E.D. Tex. Feb. 24, 2014) (observing that it "is a question of fact" whether an employer's conduct is sufficient to indicate ratification (quoting RESTATEMENT (SECOND) OF TORTS § 909 (1979))).

Here, even if Lackey's actions did not fall within the course and scope of his employment with the LLC, the LLC may still be liable. In *Michels Corporation*, the court considered whether an employer's retention of an employee after the employee was involved

9

in a fatal accident could constitute ratification. 2014 WL 708416, at *3. The plaintiffs produced evidence showing that the employer had also provided the employee with "a year-long paid vacation" and that the employee "was not disciplined until more than a year after the accident." *Id.* Judge Gilstrap found that these facts "raise[d] a material fact question about whether or not" the employer had ratified the employee's conduct and accordingly denied a motion for partial summary judgment. *Id.*

In this case, Plaintiff argues the LLC ratified Lackey's conduct by paying approximately $9,000 in legal bills related to Lackey's criminal case. *See* ECF No. 49 at 12–13. The LLC does not dispute that it paid these bills. *See* ECF No. 51. Viewing this evidence "in the light most favorable to the nonmoving party," the Court finds that a material fact issue remains as to whether the LLC's payment of Lackey's legal fees constitutes ratification of his conduct. *Fahim*, 551 F.3d at 348–49 (5th Cir. 2008). Accordingly, summary judgment is improper.

**CONCLUSION**

For the foregoing reasons, Defendant's Motion is **DENIED**.

**SO ORDERED.**

October 16, 2025

MATTHEW J. KACSMARYK
UNITED STATES DISTRICT JUDGE